UNITED STATES, Appellee

v.

Claude CARTER, Jr., Staff Sergeant,
U.S. Army, Appellant.

No. 52,864.

CM 444257.

U.S. Court of Military Appeals.

March 28, 1988.

472

For Appellant: *Captain Stephanie C. Spahn* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Major Marion E. Winter, Captain Peter D. P. Vint* (on brief); *Major Joel D. Miller.*

For Appellee: *Captain Thomas L. Herrington* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Larry D. Williams, Captain Laura G. Poston* (on brief); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Robert L. Swann.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried at Fort Carson, Colorado, by a general court-martial composed of officer and enlisted members; and, contrary to his pleas, he was convicted of several drug charges, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. His sentence was a dishonorable discharge, confinement for 36 months, forfeiture of $450.00 pay per month for 36 months, and reduction to the rank of Private E-1. The convening authority approved the findings and sentence.

The Court of Military Review ordered a new review by the staff judge advocate and action by the convening authority. After the new review had been served on defense counsel, the convening authority disapproved certain findings, consolidated others, and approved the sentence as originally adjudged. Thereafter, the Court of Military Review affirmed the approved findings and sentence; and we granted review on this issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING DEFENSE COUNSEL'S REQUEST FOR AN ADDITIONAL PEREMPTORY

CHALLENGE AFTER THE CONVENING AUTHORITY DETAILED NEW MEMBERS TO THE PANEL.

I

The panel originally detailed to sit on Carter's court-martial was composed of 9 officer members. Eight of these members were replaced by 4 officers and 4 enlisted members. After an extensive *voir dire* of these new members and the remaining member of the first panel, the military judge granted three defense challenges for cause. Also, trial counsel and defense counsel each exercised his peremptory challenge. Since only 4 members remained on the court, a quorum was lacking, so the convening authority detailed 5 more members (3 officer and 2 enlisted). Before conducting *voir dire* of the new members, defense counsel asked the judge if each side could receive an additional peremptory challenge because new members had been detailed to the panel. The military judge replied that each side had exercised its sole peremptory challenge and that neither was entitled to a further peremptory challenge.

Thereupon, defense counsel challenged all five new members for cause, and these challenges were sustained. Again, five new members (3 officer and 2 enlisted) were detailed to the court-martial. This time, after *voir dire* of these new members, two defense challenges for cause were sustained and the remaining 3 members were seated with the original 4. Thereafter, trial commenced with 4 officers and 3 enlisted members.

II

A

■ Appellant has asked us to reexamine our decision in *United States v. Holley*, 17 M.J. 361 (C.M.A.1984), which precluded allowance of an additional peremptory challenge under circumstances very similar to those in the present case. Such an invitation should not be accepted lightly, for continuity of precedent serves important purposes. However,

> *stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.

*Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940). Therefore, when persuaded by "the lessons of experience and the force of better reasoning" that a prior decision is in error, we shall be willing to reexamine an earlier precedent. *See Solorio v. United States*, —— U.S. ——, 107 S.Ct. 2924, 2933, 97 L.Ed.2d 364 (1987), quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406–08, 52 S.Ct. 443, 447–48, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). This is especially true when new arguments are presented which were not previously considered and when the matter at issue is important to the integrity of the military justice system.[1]

B

■ Although an accused tried by a court-martial has no Sixth-Amendment right that its membership reflect a representative cross-section of the military population, he does possess a due-process right to a fair and impartial factfinder. *United States v. Thomas*, 22 M.J. 388 (C.M.A. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Statutes and rules of procedure must be interpreted in the light of—and, if necessary, must yield to—this guarantee. *Cf. Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971).

Congress also has manifested its intent that the members of courts-martial be fair

---

1. Furthermore, by prospective application of a decision overruling an earlier precedent, the Court will not penalize those who have relied on the earlier holding and, yet, will avoid the perpetuation of a jurisprudential anachronism. On numerous occasions the Supreme Court has employed this technique. *See, e.g., Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

and impartial. Thus, Article 37, UCMJ, 10 U.S.C. § 837—as originally enacted in 1950 and strengthened by the Military Justice Act, Pub.L. No. 90–632, § 2(13), 82 Stat. 1338 (1968)—prohibits the exercise of command influence on court-martial personnel. This Court has consistently made clear its determination to enforce these constitutional and legislative imperatives. *United States v. Thomas, supra.*

Prior to enactment of the Uniform Code, no peremptory challenges were available in courts-martial tried in the Navy. However, according to a Navy representative, challenges for cause were granted very liberally.[2] On the other hand, the Articles of War provided that "[e]ach side shall be entitled to one peremptory challenge."[3] Under the Army practice, even if there were more than one accused, the defense "side" had a single peremptory challenge;[4] but the Air Force—although operating under the same statutory language—granted each accused a separate peremptory challenge in a common trial.[5]

Despite arguments to the contrary by Service representatives—who cited personnel problems involved in providing additional court members—[6] the House Subcommittee which considered the proposed Code in detail revised the statutory language as drafted to make clear that each accused should have a peremptory challenge, instead of having a single peremptory challenge for the entire defense "side" in a common trial.[7]

■ Peremptory challenges are authorized in Article 41, UCMJ, 10 U.S.C. § 841, which was intended to assure both fairness and the appearance of fairness in the procedure for selecting court-martial members. This Article makes no reference to the addition of members to a court-martial panel. Indeed, the only codal references to a con-

vening authority's appointing members if a general or special court-martial is reduced below the required quorum of members appear in Article 29(b) and (c), UCMJ, 10 U.S.C. § 829(b) and (c). The former subsection contains this sentence: "The trial [of a general court-martial] may proceed with the new members present *after the recorded evidence previously introduced before the members of the court* has been read to the court in the presence of the military judge, the accused, and counsel for both sides." (Emphasis added.) Similarly, subsection (c) provides that [t]he trial [of a special court-martial] shall proceed with the new members present *as if no evidence had previously been introduced at the trial, unless a verbatim record of the evidence previously introduced before the members of the court or a stipulation thereof* is read to the court in the presence of the military judge, if any, the accused and both counsel. (Emphasis added.) This language seems to contemplate a reduction below the quorum after trial has begun and the presentation of evidence has commenced; and so it does not anticipate the situation where reduction below a quorum occurs during the initial process of selecting court members before any evidence has been presented.

■ Article 41(b) can be read to mean that each accused is "entitled" to an opportunity to a single peremptory challenge exercisable as to any person who ultimately sits to try his case. Also, it can be read more restrictively to mean that each accused is "entitled" to a single peremptory challenge, which, having once been used, vanishes and is not revived with respect to members later added to the court-martial by the convening authority. However, the subcommittee's revision of the proposed statutory language in order to grant a per-

2. Hearings on H.R. 2498 before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1027 (1949).

3. *See* A.W. 18. The Army did not have peremptory challenges before 1920. Hearings, *supra.*

4. *Id.* at 1027–28.

5. *Id.* at 1028.

6. *Id.* at 1027–28. Although these arguments were rejected at the time by the Congress, they often have been repeated since then.

7. *Id.* at 1027–1028.

emptory challenge to each accused in a common trial suggests that any ambiguity in Article 41 should be resolved in favor of the greater, rather than the lesser, number of peremptory challenges.

Moreover, since Congress obviously attached importance to the peremptory challenge, clearly it did not intend to countenance procedural rules which would have a "chilling effect" on the use of this challenge. Unfortunately, however, this is the result of the interpretation of Article 41 adopted by the majority in *Holley* —whereunder, once an accused has used his peremptory challenge, he cannot be granted another challenge by the military judge even if the convening authority adds new members to the court-martial.

The "chilling effect" is best demonstrated in a situation like that of the present case, where, *by reason of the exercise of* defense challenges for cause and the Government's peremptory challenge, the membership of the court-martial has been reduced to the statutory quorum—five for a general court-martial or three for a special court-martial. Art. 16, UCMJ, 10 U.S.C. § 816. Under the procedure ordinarily followed in a trial by court-martial, defense counsel then is asked whether he wishes to use his peremptory challenge.[8] At this point, he is confronted by a dilemma, because if he exercises the peremptory challenge and the court membership is reduced below a quorum, the convening authority will appoint new members—the identity of whom then is unknown to the defense—and, under *Holley*, there will be no opportunity for further peremptory challenge. Thus, with respect to a member whom he would otherwise peremptorily challenge, he will be exchanging a "known evil" for a possibly much worse "unknown evil."

Of course, under the procedures employed in many civilian courts, a criminal defendant must decide whether to exercise a peremptory challenge against prospective jurors in the box, without knowing the identity of replacement jurors. The distinction, however, is that, while the replacement jurors in a civilian trial will come from some pool of persons selected at random from the general population, the new members of a court-martial will be handpicked by the convening authority. This official, of course, is the very person who has referred the charges for trial in the first place.[9]

### C

In deciding *Holley*, the majority also adopted too narrow a view of the military judge's role in dealing with the selection of court members. When the Uniform Code was first adopted, general courts-martial had law officers, rather than judges; special courts-martial did not even have law officers; and challenges for cause to court members were determined by the court members themselves. The Military Justice Act of 1968 created the position of military judge for both general and special courts-martial and provided that these judges would rule on challenges for cause. Implicit in this codal change was a legislative intent for military judges to have authority over the selection of court-martial members much like that which civilian judges have over the selection of jurors.

A Federal District judge may award additional peremptory challenges in his sound discretion. *See United States v. Springfield*, 829 F.2d 860 (9th Cir.1987). Indeed, a grant of additional peremptory challenges to which a defendant was not "entitled" under the Federal Rules of Criminal Procedure helped permit affirmance of the conviction in *United States v. Blanton*, 719

---

8. Trial counsel exercises his peremptory challenge first. *See* R.C.M. 912(g)(1), Manual for Courts-Martial, United States, 1984; App. 8*b*, pp. A8–12 and A8–13, Manual for Courts-Martial, United States, 1969 (Revised edition); App. 8*a*, p. 507, Manual for Courts-Martial, United States, 1951.

9. Congress was concerned about the power of a commander in selecting court-martial members and could hardly have intended a procedure which gives him greater power to "stack" the court against an accused.

F.2d 815, 828 (6th Cir.1983), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984).

▆▆▆ It seems clear, therefore, that whether the drafters of the Code originally intended for a "law officer" to have the discretion to grant additional peremptory challenges, those who wrote the Military Justice Act of 1968 intended that a military judge have this discretion. Moreover, regardless of the provisions of Article 41, a military judge has a *duty* to grant additional peremptory challenges if he determines that this is necessary to assure a fair trial.[10] Therefore, even if the word "entitled" in Article 41(b) were construed not to give an accused the statutory right to an additional peremptory challenge when the convening authority adds new members to the court-martial panel, the military judge has the discretion to grant such challenges; and the denial of a request for additional peremptories can be reviewed for abuse of discretion.[11]

### III

Although the majority opinion in *Holley* as to peremptory challenges should now be rejected, this may not require reversing appellant's conviction. In various instances, the Supreme Court has allowed prospective overruling of well-established constitutional decisions. *See, e.g., Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601

(1965). After the right to jury trial was held applicable to the states pursuant to the Fourteenth Amendment, *see Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), this decision was applied only prospectively, *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968). Likewise, after *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), announced that servicemembers had a right to jury trial with respect to offenses that are not service-connected, the Supreme Court declined to give this decision retroactive effect. *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).[12]

Recently, however, in *Griffith v. Kentucky*, —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court ruled that the new constitutional principle which *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), had announced with respect to the use of peremptory challenges must be applied retroactively to all cases still undergoing direct review. In his opinion for the majority, Justice Blackmun stated:

> We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.

107 S.Ct. at 716.

▆▆▆ Under this holding, there apparently is no leeway for this Court to decide that Carter is entitled to the benefit of the overruling of *Holley* but that other accused

---

**10.** *Cf. Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971), where the Supreme Court held that state limitations on a judge's power to grant a change of venue in a misdemeanor case gave way to the defendant's right to a fair trial.

**11.** Apart from any statutory right to an additional peremptory challenge under these circumstances, the accused has a persuasive argument that a military judge has abused his discretion when he refuses to grant an additional peremptory challenge exercisable against new members who have been added to the court-

martial after the defense has already exercised its peremptory challenge.

**12.** In *Gosa* only a plurality opinion joined in by four Justices held specifically that *O'Callahan* was to be applied only prospectively; and Justice Douglas did not rule on this issue. *O'Callahan* was reversed by *Solorio v. United States*, —— U.S. ——, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987); and now it remains to be determined whether *Solorio* is itself retroactive. *United States v. Avila*, Dkt. No. 57,512 (argued March 17, 1988).

whose cases are undergoing direct review would not share this entitlement. However, in light of *Griffith,* is it permissible for this Court to hold that, even though we conclude that *Holley* placed an undue restriction on the grant of additional peremptory challenges and should be overruled, Carter himself is not entitled to benefit therefrom?

Certainly it seems ironic for us to agree with an accused who claims on appeal that a prior decision by this Court, on which the military judge relied at trial, was erroneous but at the same time to deny him any fruits from his victory. Indeed, some might suggest that there was little point in Carter's mounting an appeal if only future accused would gain therefrom.

▆▆▆ We recognize the force of this contention. However, the power of an appellate court to "make a choice for itself between the principle of forward operation and that of relation backward"—a power to which we adverted long ago in *United States v. Rinehart,* 8 U.S.C.M.A. 402, 409, 24 C.M.R. 212, 219 (1957)[13]—includes the power to hold that an overruling decision shall be applied only to future trials. We conclude that—at least where a constitutional holding is not directly involved— *Griffith* does not prevent fully prospective overruling, which does not distinguish in result between similarly situated appellants.

▆▆▆ Moreover, we have considered carefully the process by which the court members were selected in order to determine if there was any indication of unfairness or bias on the part of the members who tried Carter. In light of the painstaking manner in which the selection process was conducted, the extensive *voir dire* that was conducted, and the judge's liberality in granting challenges for cause,[14] no need

exists to reverse appellant's conviction, even though he was not granted the requested additional peremptory challenges.

## IV

The decision of the United States Army Court of Military Review is affirmed.

COX, Judge (concurring):

This case asks us to revisit *United States v. Holley,* 17 M.J. 361 (C.M.A.1984). Because I essentially agree with Chief Judge Everett's view of Article 41(b), Uniform Code of Military Justice, 10 U.S.C. § 841(b), I join him in overruling that decision prospectively.

Articles 25 and 29, UCMJ, 10 U.S.C §§ 825 and 829, respectively, create a situation unique to the military. First of all, the convening authority selects the court members. Second, a court-martial composed of members may not proceed if for some reason the number of members falls below the statutory minimum: 5 in a general court-martial and 3 in a special court-martial. Art. 16, UCMJ, 10 U.S.C. § 816. Recognizing the possibility of military exigencies, Congress permitted a convening authority to "detail" new members to the court-martial and continue the trial. Art. 29. This is true even if evidence has been introduced.

In contrast, in civilian practice a mistrial occurs if a jury falls below quorum after a trial is underway. For this reason, it is common practice in most civilian jurisdictions to appoint alternate jurors, all of whom are subjected to peremptory challenge if such challenge in authorized by law. *See generally* 76 Am.Jur.2d, Trial, § 1096 (1975).

In *Holley,* the majority concluded:

We hold that the word "entitled" which is employed in Article 41(b), as well as 28

---

13. The quotation—probably the first case in which this Court announced that a rule be applied only prospectively—was from Justice Cardozo's opinion in *Great Northern Railway Company v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); *see also Griffin v. Illinois,* 351 U.S. 12, 20, 76 S.Ct. 585,

591, 100 L.Ed. 891 (1956) (Frankfurter, J., concurring in the judgment).

14. Even though Colonel Benson was excused for cause, the record inexplicably indicates he was present for some of the later preliminary proceedings.

478

U.S.C. § 1870 and Fed.R.Crim.P. 24(b), provides no discretion to a trial judge to award additional challenges. *United States v. Gullion,* 575 F.2d 26 (1st Cir. 1978); *United States v. Palumbo,* 401 F.2d 27, 275 (2d Cir.1968), *cert. denied,* 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *Estes v. United States,* 335 F.2d 609 (5th Cir.1964); *Blount v. Plovidba,* 567 F.2d 583, 585 (3d Cir.1977). *Id.* at 366. A review of these cases reveals that only *Blount* discusses the meaning of "entitled"—albeit in the context of peremptory challenges in a civil case, not a criminal case. I conclude that reliance on these authorities in *Holley* was misplaced in military jurisprudence.

Thus I turn to constitutional notions of due process and fundamental fairness and find "that the right of peremptory challenge is not of constitutional magnitude, and may be withheld altogether without impairing the constitutional guarantee of impartial jury and fair trial." *Batson v. Kentucky,* 476 U.S. 79, 108, 106 S.Ct. 1712, 1729, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring), citing *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Frazier v. United States,* 335 U.S. 497, 505 n. 11, 69 S.Ct. 201, 206 n. 11, 93 L.Ed. 187 (1948); *United States v. Wood,* 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936); and *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919). That does not mean that the abuse or misuse of the peremptory challenge is not of constitutional concern. *See Batson v. Kentucky, supra.*

It is, therefore, with a view toward fundamental fairness in military jurisprudence that I look at the question of peremptory challenges in a court-martial and this is what I find:

1. The Government has the functional equivalent of an unlimited number of peremptory challenges. Article 25(d)(2) provides that "the convening authority shall detail as members ... such members of the armed forces as, in his opinion, are best qualified for the duty." The statutory authority to choose the members necessarily includes the corollary right not to choose.

Additionally, Article 41 gives trial counsel, who represents the Government in the court-martial, one more peremptory challenge. Ironically, in this case it was the use of the peremptory challenge by trial counsel that put the defense in the position of having to breach quorum if it was to exercise its peremptory challenge. In this way it came to be that members who were never exposed to the accused's peremptory challenge were put on the court-martial.

2. As previously mentioned, under the law a court-martial may proceed with new members even after considerable evidence has been introduced. A military accused does not have the protection of a mistrial in that circumstance.

3. I can find no persuasive reason which convinces me that an additional challenge should not be granted in the circumstance where the convening authority is detailing brand new members to a court-martial.

I would not make additional peremptory challenges a matter of right. Instead, I would construe Article 41 to give each accused *one* peremptory challenge as a matter of statutory right. Then I would give the military judge broad discretion to grant such additional peremptory challenges as he deems appropriate given the circumstances then and there existing. Thus, I would construe the word "entitled" to mean that an accused enjoys at least one peremptory challenge. *See United States v. Harris,* 13 M.J. 288, 294 n. 3 (C.M.A. 1982) (Everett, C.J., dissenting). I would not read into it the negative construction of limiting him to only one challenge if more were necessary to insure a fair trial.

In applying such a construction to a given case, I may part company with Chief Judge Everett. Here I conclude that this military judge did not abuse his discretion in denying an additional peremptory challenge. It is quite obvious on this record that he followed our "mandate for liberality in passing on challenges" for cause.

*United States v. Smart*, 21 M.J. 15, 21 (C.M.A.1985).

Accordingly, I join Chief Judge Everett in affirming the conviction. I likewise agree with prospective application of the new rule.

SULLIVAN, Judge (concurring in the result):

I agree with the result reached in the present case but do so on the basis of this Court's decision in *United States v. Holley*, 17 M.J. 361 (C.M.A.1984). Accordingly, I do not agree with Chief Judge Everett's opinion that a military accused, having exercised a peremptory challenge, is entitled to an additional peremptory challenge whenever a new member is added to the court. Art. 41 (b), Uniform Code of Military Justice, 10 U.S.C. § 841(b). Judge Cox's approach to this case is more flexible and is not necessarily inconsistent with language in *United States v. Holley, supra* at 367–68, implying a similar discretionary power may exist in the military judge, albeit on a different statutory basis. Art. 39, UCMJ, 10 U.S.C. § 839. However, to the extent his opinion is construed as requiring the military judge to grant a peremptory challenge in the situation posited above, I also disagree with him.

Concerning comparable federal practice, I must note that Fed. R. Crim. P. 24(b) expressly provides for additional peremptory challenges only in cases involving multiple defendants. *See United States v. Nelson*, 733 F. 2d 364, 367–68 (5th Cir.), *cert. denied*, 469 U.S. 937, 105 S.Ct. 341, 83 L.Ed.2d 276 (1984); *United States v. Wilson*, 571 F.Supp. 1422, 1429–30 (S.D. N.Y.1983), *aff'd*, 750 F.2d 7 (2d Cir.1984). *Cf. United States v. Springfield*, 829 F.2d 860, 863–64 (9th Cir.1987). In fact, a proposed amendment to this rule imparting discretion to a federal court to grant additional peremptories in all cases was rejected by Congress in 1977. 18 U.S.C.A., Rule 24, p. 37 (1987 Pocket Part). Also, there is no analog in military practice to Fed.R. Crim.P. 24(c) which authorizes additional peremptories challenges where alternate jurors are involved. *See United States v. Springfield, supra.* In this light and in view of the federal criminal cases applying Fed.R.Crim.P. 24, which were cited in *United States v. Holley, supra* at 366–67, I must reject my Brothers' tortuous interpretations of Article 41(b).