UNITED STATES, Appellee,

v.

James G. WITHAM, Sergeant, U.S. Marine Corps, Appellant.

No. 96–1179.
Crim.App. No. 95–0906.

U.S. Court of Appeals for the Armed Forces.

Argued April 9, 1997.

Decided Sept. 30, 1997.

Certiorari Denied Feb. 23, 1998.
See 118 S.Ct. 1051.

Effron, J., filed concurring opinion.

Cox, C.J., filed concurring statement.

298

For Appellant: *Lieutenant C.J. McEntee*, JAGC, USNR (argued); *Lieutenant J.K. Van Nest*, JAGC, USNR.

For Appellee: *Lieutenant R. J.E. Verby*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC, and *Commander D.H. Myers*, JAGC, USN (on brief); *Lieutenant Andrew J. Waghorn*, JAGC, USNR.

*Opinion of the Court*

SULLIVAN, Judge:

During December of 1994 and January of 1995, appellant was tried by a general court-martial composed of officer and enlisted members at Marine Corps Logistics Base, Albany, Georgia. Contrary to his pleas, he was found guilty of making a false official statement and filing a false travel claim, in violation of Articles 107 and 132, Uniform Code of Military Justice, 10 USC §§ 907 and 932, respectively. He was sentenced to a bad-conduct discharge, confinement for 8 months, forfeiture of $500 pay per month for 4 months, and reduction to E–1. On May 11, 1995, the convening authority approved the sentence as adjudged. On May 31, 1996, the Court of Criminal Appeals affirmed the findings and sentence as adjudged and approved. 44 MJ 664.

On October 28, 1996, this Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY DEPRIVING APPELLANT OF HIS STATUTORY RIGHT TO PEREMPTORILY CHALLENGE A FEMALE MEMBER OF HIS COURT-MARTIAL PANEL.

We hold that gender, like race, is an impermissible basis for the exercise of a peremptory challenge by either the prosecution or a military accused. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *United States v. Annigoni*, 96 F.3d 1132, 1139 (9th Cir.1996) (en banc). The military judge, therefore, did not err in denying appellant's peremptory challenge of a detailed female court member based solely on her gender. *See also United States v. Smith*, 27 MJ 242 (CMA 1988).

Appellant was charged with various offenses at his court-martial, including kidnap-

ping and rape. Following *voir dire* of the courtmembers, defense counsel peremptorily challenged the only female panel member, Staff Sergeant (SSgt) H. There had been no prior attempt made by the defense to challenge SSgt H for cause.

During individual *voir dire*, SSgt H had been questioned by the military judge and both counsel. She testified that she had previously been held up at gun point and that she knew the alleged rape victim from prior interactions but did not socialize with her. She indicated that neither factor would affect her impartiality. H further testified that none of her friends or family had ever been the victim of a sexual assault. Defense counsel then concluded his individual *voir dire* of SSgt H by asking, "If a woman was to testify, as a woman would you feel more inclined to believe her testimony or not?" H, in response stated, "It doesn't matter what sex they are, sir. It doesn't matter to me if she is a woman or not; it's the basis of truth in the testimony I'm convinced by. Her sex—it doesn't matter that she's a woman. It doesn't have any bearing on what I would feel."

At the conclusion of *voir dire*, defense counsel sought to peremptorily challenge SSgt H. The following colloquy then occurred:

TC: Your Honor, in light of the fact that the victim's sex is female and the member being challenged is female, the Government would ask that the defense be required to show a—some type of a reason other than—

MJ: Are you talking about the *Batson* case and so on—

TC: Yes, sir. *McCollum*, I believe, is the authority.

MJ: Is there anything—I'm sorry. Did the sex of Staff Sergeant Haynes—for the record, she is female. Did that enter into your decision to preempt?

DC: Yes, it did, sir.

The military judge, noting that SSgt H was the only female panel member, denied the challenge because it was improperly based on gender. The judge did allow the defense another opportunity to peremptorily challenge one of the other remaining court members, which the defense did. However, playing the "numbers" game,[1] the defense later was allowed to rescind its challenge and chose not to utilize it.

Appellant was found not guilty of rape and kidnapping but guilty of the other offenses noted above. The Court of Criminal Appeals affirmed the military judge's ruling denying appellant's gender-based peremptory challenge. It held that a military accused cannot exercise a peremptory challenge based upon a potential court member's gender. 44 MJ at 666.

— — —

Appellant asserts that the military judge incorrectly denied his peremptory challenge of SSgt H because it was based on her female gender. He acknowledges that the military judge's ruling can be sustained on the basis of the decisions of the Supreme Court in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (party to civil action may not exercise peremptory challenge based on gender), and *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (criminal defendant may not exercise peremptory challenge on basis of race of juror), although he questions the soundness of the latter decision.[2] Nevertheless, he asks this Court to "digress"

---

1. A finding of guilty in a non-capital court-martial case such as appellant's requires a two-thirds vote of the members of the panel. Art. 52(a)(2), Uniform Code of Military Justice, 10 USC § 852(a)(2). "[A]ny fraction of a vote" required for conviction "is rounded up to the next whole number"; thus, a six-member panel requires four votes to convict, while a panel of seven requires five. RCM 921(c)(2)(B), Discussion, Manual for Courts–Martial, United States (1995 ed.). Accordingly, defense counsel's withdrawal

of his peremptory challenge meant five rather than four votes were required for conviction in this case.

2. Appellate defense counsel's attack on the majority opinion in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), must be lodged with the Court that issued that opinion. We reject any suggestion by that counsel that *McCollum* should not be applied in the military justice system because it was wrongly decided by the Supreme Court.

from these Supreme Court precedents, Final Brief at 14–15, and not apply them to his sole peremptory challenge at his court-martial. *See* Art. 41(b)(1), UCMJ, 10 USC § 841(b)(1).

■ As a starting point, we note that this Court is a court of law (*see* Art. 67(c), UCMJ, 10 USC § 867(c)(1994)) and we are generally not free to "digress" from applicable Supreme Court precedent applying the Constitution to criminal trials. *See generally Weiss v. United States*, 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). Moreover, it is a "principle[ ] of law ... generally recognized in the trial of criminal cases in the United States district courts ..." that a criminal defendant may not exercise a peremptory challenge on the basis of race or gender. Art. 36(a), UCMJ, 10 USC § 836(a); *see generally Annigoni*, 96 F.3d at 1138 n. 8; *United States v. Tokars*, 95 F.3d 1520, 1534 (11th Cir.1996); *United States v. Lampkins*, 47 F.3d 175, 178 (7th Cir.1995); *United States v. Bergodere*, 40 F.3d 512, 515 (1st Cir.1994).

In addition, this Court has repeatedly held that the *Batson* line of cases (*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)), of which *J.E.B. v. Alabama ex rel. T.B.*, *supra*, is a part, applies to the military justice system. *United States v. Greene*, 36 MJ 274 (CMA 1993); *United States v. Moore*, 28 MJ 366 (CMA 1989); *United States v. Santiago–Davila*, 26 MJ 380 (CMA 1988). Finally, appellant concedes that extension of that line of cases to prohibit sexual discrimination by the Government in the military justice system is appropriate. *See generally J.E.B. v. Alabama ex rel. T.B.*, *supra*; *see United States v. Smith*, 27 MJ 242. Accordingly, our primary concern on this appeal is whether the constitutional prohibition against sexual discrimination in the exercise of peremptory challenges must be applied *to an accused or defendant in the military justice system*. *See Georgia v. McCollum*, *supra*; *see generally Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2562–63, 41 L.Ed.2d 439 (1974)(members of armed forces "not excluded from the protection granted by the First Amendment," but "different character of the military community

and ... mission requires a different application" of this constitutional protection).

On this question, appellant makes three distinct, albeit related, arguments. First, he asserts that a military person, unlike his civilian counterpart, has no right to serve as a member of a court-martial. Thus, he contends that the Supreme Court decision in *McCollum*, which protects a civilian's right to serve on a jury without being subjected to race or sex discrimination is simply inapplicable in the military justice system. Reply Brief at 5. Second, he asserts that "a military accused has absolutely no say in who is detailed to his court-martial"; therefore, he is not a state actor within the meaning of *McCollum*. Reply Brief at 5–6. Finally, he asserts that the military justice system is fundamentally different from the civilian justice systems because our system gives unlimited peremptory challenges to the Government and "one and only" one peremptory challenge to the defense. Final Brief at 8. Thus, he contends that it would be grossly unfair to follow *McCollum* and to place on "the lonely military accused" the burden of rectifying the "Government's 'embarrassing' legacy" of sexual discrimination. Final Brief at 13.

I

We turn first to appellant's argument that the Supreme Court decisions on peremptory challenges should not be applied to an accused in a court-martial case. He asserts that a "convening authority is granted absolute authority in detailing military members to a court-martial convening order" under Article 25, UCMJ, 10 USC § 825. He further asserts that "[m]any military members, therefore, are treated unequally in this process because a convening authority may intentionally exclude them from participation." Reply Brief at 4. Accordingly, he argues that Supreme Court decisions protecting a civilian's right to sit on a jury could not possibly apply to the military because the servicemember has no right whatsoever to sit as a member of a court-martial. *Id.* at 5.

■ It is beyond cavil that there are differences between our military justice system

and the various civilian criminal justice systems in our country. However, these differences do not necessarily dictate that constitutional decisions on civilian criminal justice be found *per se* inapplicable to the military justice system. *See generally Parker,* 417 U.S. at 756, 94 S.Ct. at 2561–62 (applying vagueness standard for "criminal statutes regulating economic affairs" to Articles 133 and 134, UCMJ, 10 USC §§ 933 and 934, respectively). For example, this Court did not reject the *Batson* line of cases prohibiting racial discrimination in peremptory challenges simply because a military accused has no Sixth Amendment right to trial by jury. *See Ex Parte Quirin,* 317 U.S. 1, 39–40, 63 S.Ct. 2, 16–17, 87 L.Ed. 3 (1942). Speaking for the Court, then-Chief Judge Everett made this point clear in *Santiago–Davila,* 26 MJ at 389–90:

> *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)—which was decided after appellant's trial—is not based on a right to a representative cross-section on a jury but, instead, on an equal-protection right to be tried by a jury from which no "cognizable racial group" has been excluded. *See id.* at 96, 106 S.Ct. at 1723. This right to equal protection is a part of due process under the Fifth Amendment, *see Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); and so it applies to courts-martial, just as it does to civilian juries.

■ Admittedly, the method for detailing prospective court members for courts-martial differs from the method of selecting potential jurors. *See United States v. McClain,* 22 MJ 124, 128–29 (CMA 1986); *cf. United States v. Contreras,* 108 F.3d 1255, 1265–68 (10th Cir.1997). However, the convening authority does not have absolute discretion to select court members for courts-martial (*see* Art. 25) nor can he do so in a way that violates the Constitution or the Code. *See United States v. Hilow,* 32 MJ 439 (CMA 1991); *Smith,* 27 MJ at 250 (convening authority may not purposefully detail female members to achieve guilty verdict). Moreover, once detailed as a member and the

court-martial has begun, the military member may only be removed with the permission of the military judge or a majority of the court-martial. *See* Art. 25 and RCM 912(f)(3) and (h) and 801(a)(3), Manual for Courts–Martial, United States (1995 ed.). In this context and in view of our past precedent, we reject appellant's argument that a servicemember does not have an equal protection/due process right against being removed from a court-martial panel because of race *or sex. See generally United States v. Tulloch,* 47 MJ 283 (1997); *United States v. Greene,* 36 MJ 274.

## II

■ We next turn to appellant's argument that a military accused is not a "state actor" for purposes of the Fifth Amendment and the decision of the Supreme Court in *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33. He contends that it is "terminally absurd" to apply the logic and "legal fiction" of *McCollum* to a military accused who has no right to trial by jury or any say whatsoever in the composition of his court-martial panel. Reply Brief at 5–6. We reject appellant's hyperbole and conclude that a military accused is a "state actor" for purposes of his peremptory challenge at a court-martial. *See generally United States v. De-Gross,* 960 F.2d 1433, 1440–42 (9th Cir.1992).

■ Again, we note that a military accused has no right to a trial by jury under the Sixth Amendment. *See Ex Parte Quirin, supra.* He does, however, have a right to due process of law under the Fifth Amendment (*see* 47 MJ at 301), and Congress has provided for trial by members at a court-martial. *See* Art. 16(1)(A); *see generally Weiss,* 510 U.S. at 176–78, 114 S.Ct. at 760–61. Part of the process due is the right to challenge for cause and challenge peremptorily the members detailed by the convening authority. Art. 41. Moreover, it is a military judge or, if none, the court-martial as a whole, who must decide these various challenges by a military accused. *See* RCM 912(f)(3) and (h) and 801(a)(3). It is these features of the military justice system which

permit a military accused to use the power of the Government to remove members from his court-martial. *See Annigoni*, 96 F.3d at 1137.

More particularly, like a civilian defendant, a military accused has challenges for cause and peremptory challenges. *Id.* at 1136–37. The peremptory challenge in the court-martial system is a statutory creation of Congress. Art. 41. It performs a well-recognized role in the selection of qualified and impartial court members. *See Edmonson v. Leesville Concrete Co. Inc.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 2085, 114 L.Ed.2d 660 (1991); *United States v. Carter*, 25 MJ 471, 474 (CMA 1988). Moreover, although only one peremptory challenge is normally allowed each side, this procedure does not change the nature of an accused's peremptory challenge as state action. *See J.E.B.*, 511 U.S. at 142 n. 13, 114 S.Ct. at 1428 n. 13 ("The exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system."). Finally, because it is the military judge who must discharge the perspective court member, "[r]egardless of who precipitated the jurors' removal, the perception and the reality in a criminal trial will be that the [military judge] has excused jurors based on race [or gender], an outcome that will be attributed to the" United States. *McCollum*, 505 U.S. at 53, 112 S.Ct. at 2356. In this light, we conclude that a military accused's peremptory challenge is state action and is restricted by the Due Process Clause of the Fifth Amendment to the same extent as is the Government's. *See Annigoni, supra* at 1136 n. 4.

## III

Turning to appellant's final argument, he contends that it is "fundamentally unfair" to burden a military accused with the equal-protection restrictions of *J.E.B. v. Alabama ex rel. T.B., supra* (requiring jurors not to be removed on basis of unlawful sex discrimination). He asserts that a military accused is not responsible for the Government's past sexism in convening courts-martial in the military justice system. He further notes that the convening authority personally details the panel members in the military justice system; therefore, "[t]he Government has the functional equivalent of an unlimited number of peremptory challenges." *See Carter*, 25 MJ at 478 (Cox, J., concurring). Final Brief at 9. Citing his single peremptory challenge, he contends that it is grossly unfair to require him to sacrifice his only chance to influence the composition of his court-martial to remedy a government-created social ill. Final Brief at 10.

As noted above, "peremptory challenges are not constitutionally protected fundamental rights." *McCollum*, 505 U.S. at 57, 112 S.Ct. at 2358. Congress statutorily authorized use of peremptory challenges for the prosecution and defense at courts-martial in Article 41 of the Code. They are a means to help achieve "the constitutional end of . . . a fair trial." 505 U.S. at 57, 112 S.Ct. at 2358; *see Carter*, 25 MJ at 474 (explaining that peremptory challenges insure "both fairness and the appearance of fairness in the procedure for selecting court-martial members"). However, "the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." 505 U.S. at 57, 112 S.Ct. at 2358.

The Supreme Court has also rejected the contention that fairness requires defendants to have unrestricted peremptory challenges. *See Georgia v. McCollum, supra.* It reiterated that " 'if race stereotypes are the price for acceptance of a jury panel as fair,' . . . such a 'price is too high to meet the standard of the Constitution.' " 505 U.S. at 57, 112 S.Ct. at 2358. Moreover, the Court noted, "It is an affront to justice to argue that a fair trial includes the right to discriminate against a group of citizens based upon their race." *Id.* These same conclusions apply to sexual stereotypes as well. *See J.E.B. v. Alabama ex rel. T.B., supra.* We see no military exigency or necessity which requires that a military accused's right to a peremptory challenge be unfettered by these equal-protection concerns. *See generally Parker, supra* at 758, 94 S.Ct. at 2563 ("different character of the military community and . . .

military mission" may require "different application of" constitutional protection).

 Admittedly, Congress has initially entrusted the responsibility of selecting qualified court-martial members to the convening authority. Art. 25. The convening authority, however, is not without limits in detailing panel members. *See* Art. 25(d). We have clearly stated that a convening authority cannot "pack" the panel against an accused by selecting those most likely to punish accused persons severely. *United States v. McClain*, 22 MJ 124, 131 (CMA 1986); *see United States v. Smith*, 27 MJ 242, 250 (CMA 1988)(convening authority cannot select female members to assure a particular outcome); *United States v. Greene*, 20 USCMA 232, 43 CMR 72 (1970)(convening authority violated the Code by appointing only very senior officers to the court-martial of an E–1); *United States v. Hedges*, 11 USCMA 642, 643, 29 CMR 458, 459 (1960)(upheld reversal because court-martial had distinct appearance of being "hand-picked" by Government); *see also* Art. 37, UCMJ, 10 USC § 837 (prohibiting unlawful command influence). It is also "well-established ... that the trial counsel, being a partisan advocate, can play no part in the selection of court members." *United States v. Marsh*, 21 MJ 445, 447 (CMA 1986); *see Smith*, 27 MJ at 250–51; *United States v. Cherry*, 14 MJ 251 (CMA 1982). Finally, we continue to maintain a watchful eye in this area as we are "especially concerned to avoid either the appearance or reality of improper selection." *McClain*, 22 MJ at 132. In these circumstances, the convening authority's broad detailing power does not necessitate that a military accused have the freedom to discriminate against prospective court members based upon their gender or race. *See generally Weiss v. United States, supra* (the factors supporting civilian rule are not so extraordinarily weighty as to overcome balance struck by Congress).

Finally, we do not agree that a military accused's putative disadvantage in peremptory challenges permits him to exercise his lone challenge in a sexually discriminating manner. The Uniform Code of Military Justice provides the same number of peremptory challenges for the accused and trial counsel. Art. 41. The view that the convening authority's detailing power creates an unlimited number of government peremptories has not been adopted by a majority of this Court. *Cf. Carter, supra* at 478 (Cox, J., concurring). In fact, a majority of this Court has rejected the premise for such a view by holding that this power must be exercised by the convening authority in an impartial manner. *See Smith, supra* at 250–51. Furthermore, we are not persuaded that a benign intent to include servicemembers for purposes of cross-representation equates to an unlawful intent to exclude servicemembers based on their gender. *See generally Holland v. Illinois*, 493 U.S. 474, 482–83, 110 S.Ct. 803, 808–09, 107 L.Ed.2d 905 (1990).

 In sum, we conclude that *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33, is applicable to an accused in the military justice system. We further hold that sex discrimination must be prohibited in our system of justice just as racial discrimination has been. As eloquently stated by our late Brother, Judge Wiss, "Racial discrimination is anathema to the military justice system. It ought not—and it will not—be tolerated in any form." *Greene*, 36 MJ at 282 (concurring).[3]

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges CRAWFORD and GIERKE concur.

EFFRON, Judge (concurring):

The military judge decided this issue by applying the principles of law applicable in Federal civilian courts with respect to per-

---

3. In reality, only a total ban on peremptory challenges will eliminate the possibility of racial and gender discrimination in use of such challenges. *See Batson v. Kentucky*, 476 U.S. 79, 107, 106 S.Ct. 1712, 1728–29, 90 L.Ed.2d 69 (1986) (Mar- shall, J., concurring); Sullivan and Amar, *Jury Reform in America—A Return to the Old Country*, 33 Am.Crim. L.Rev. 1141, 1144–45, 1160–64 (1996).

emptory challenges made by a defendant. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)(applying *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny to challenges based on gender); *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)(applying *Batson* and its progeny to challenges by a criminal defendant and recognizing due process right of juror to not be challenged for unconstitutional reason). The action of the military judge was consistent with Article 36(a), Uniform Code of Military Justice, 10 USC § 836(a) (trial procedures prescribed by the President "shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter").

I write separately to note the implications of the significant structural differences between court-martial panels and civilian juries. As we observed in *United States v. Tulloch*, 47 MJ 283 (1997), the Government has a much greater role in shaping the composition of a court-martial than the prosecution is given with respect to the composition of a civilian jury: (1) courts-martial are not subject to the jury trial requirements of the Constitution; (2) military accused are tried by a panel of their superiors, not by a jury of their peers; (3) military panels are selected by the commander who convened the court-martial on a best-qualified basis and are not drawn from a random cross-section of the community; (4) military counsel are provided with only a single peremptory challenge, in contrast to numerous peremptory challenges permitted by most civilian jurisdictions; and (5) in civilian jurisdictions, the numerous per-emptory challenges are used to select a jury, but in courts-martial, a peremptory challenge is used to eliminate those already selected by the convening authority. *See* Art. 25, UCMJ, 10 USC § 825. These differences mean that the ability of an accused to shape the composition of a court-martial is relatively insignificant compared to the influence of the convening authority and trial counsel, who represent the interests of the Government. Under these circumstances, the considerations that led us in *Tulloch* to impose specific procedural requirements on the Government's representative in responding to *Batson* challenges are not applicable to per-emptory challenges made by the defense. The reliance in today's opinion on Article 36 and the procedures in federal civilian criminal trials makes clear that the obligations of the defense in a court-martial are governed by the requirements applicable in federal civilian criminal trials, not by requirements that we have fashioned to address the unique role of the Government in shaping the composition of a court-martial panel.

COX, Chief Judge (concurring):

I join Judge Effron's separate opinion. I write, essentially, to observe once again that the convening authority has an almost unlimited ability to choose the court members. You may define that power any way you wish, but the corollary to the power to select is the power *not* to select. As Judge Sullivan has observed, in previous cases I have called this corollary "an unlimited number of peremptory challenges." *United States v. Carter*, 25 MJ 471, 478 (CMA 1988)(concurring). I am open to suggestions from the majority for a clearer way to define this phenomena.