UNITED STATES, Appellant,

v.

Patrick D. TULLOCH, Private,
U.S. Army, Appellee.

No. 96–5008.
Crim.App. No. 94 00329.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 28, 1996.

Decided Sept. 30, 1997.

Sullivan and Crawford, JJ., filed dissent-
ing opinions.

For the United States: *Colonel John M.
Smith* (argued); *Lieutenant Colonel Eva M.
Novak, Captain John M. Bergen,* and *Cap-
tain Virginia G. Beakes* (on brief).

For Appellee: *Captain Michael E. Hatch*
(argued); *Colonel John T. Phelps, II,* and
*Lieutenant Colonel Michael L. Walters* (on
brief).

*Opinion of the Court*

EFFRON, Judge:

Based on mixed pleas, appellee was con-
victed by members of attempted robbery;
conspiracy to commit robbery; and violation
of a general regulation by possession of an
unregistered pistol, by transportation of a
loaded pistol, and by usury (13 specifica-
tions), in violation of Articles 80, 81, and 92,
Uniform Code of Military Justice, 10 USC
§§ 880, 881, and 892, respectively. The con-
vening authority approved the sentence of a
bad-conduct discharge, 3 years' confinement,

total forfeitures, a fine, and reduction to the lowest enlisted grade.

On appeal, the Court of Criminal Appeals held that the military judge erred by failing to establish a proper record prior to overruling appellee's objection to trial counsel's exercise of a peremptory challenge against an African–American member of·the court-martial panel. 44 MJ 571 (1996). That court set aside the findings to which appellee had pleaded not guilty and the sentence, and it authorized a rehearing.[1]

The following issues were certified by the Judge Advocate General of the Army:[2]

## I

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED WHEN IT GAVE NO DEFERENCE TO THE MILITARY JUDGE'S ASSESSMENT OF THE TRIAL COUNSEL'S CREDIBILITY IN HIS DETERMINATION THAT THE TRIAL COUNSEL'S PEREMPTORY CHALLENGE AGAINST A MINORITY COURT MEMBER WAS NOT A RACE-BASED "SUBTERFUGE" AS ASSERTED BY THE TRIAL DEFENSE COUNSEL.

## II

WHETHER THE ·ARMY COURT ERRED BY SHIFTING THE ULTIMATE BURDEN OF PERSUASION TO THE GOVERNMENT REGARDING WHETHER A DISCRIMINATORY INTENT EXISTED IN A GOVERNMENT PEREMPTORY STRIKE OF A MINORITY MEMBER, AND, THEREBY, VIOLATED THE PRINCIPLE THAT THE BURDEN IN SUCH CHALLENGES RESTS WITH, AND NEVER SHIFTS FROM, THE OPPONENT OF THE STRIKE. *See Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995).

We hold that the Court of Criminal Appeals did not err and affirm the decision below.

## I.  BACKGROUND

### A.  THE CONSTITUTIONAL FRAMEWORK

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court addressed the tension between the prosecution's historic privilege to exercise peremptory challenges unfettered by "judicial control" and "the constitutional prohibition on exclusion of persons from jury service on account of race." *See Batson v. Kentucky,* 476 U.S. 79, 91, 106 S.Ct. 1712, 1720, 90 L.Ed.2d 69 (1986), citing 380 U.S. at 214–24, 85 S.Ct. at 832–38; U.S. Const., amend. XIV (Equal Protection Clause). The Court held in *Swain* that it was appropriate to presume that a prosecutor had properly exercised the State's challenges, and it declined to examine the prosecutor's actions in the case under review. The Court noted, however, that a defendant could rebut the presumption through proof that the prosecutor had used challenges to exclude persons on the basis of race by showing, for example, a repeated pattern "in case after case." 380 U.S. at 223–24, 85 S.Ct. at 837–38.

Twenty-one years later, the Court in *Batson* concluded that *Swain* had "placed on defendants a crippling burden of proof" that had rendered prosecutors' use of peremptory challenges "largely immune from constitutional scrutiny." 476 U.S. at 92–93, 106 S.Ct. at 1721. The Court, in light of evolving standards of proof in other areas of the law involving allegations of discrimination, established new procedures for considering an alleged discriminatory use of peremptory challenges by the prosecution.

First, the "defendant may establish a *prima facie* case of purposeful discrimination" based "solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." The defen-

---

1.  *See* n. 3, *infra.*

2.  We heard oral argument in this case at Duke University School of Law, Durham, N.C., on Oc-

tober 28, 1996, without objection from the parties involved. *See* 38 MJ 136, 137 n. 1 (CMA 1993).

dant "must show that he [or she] is a member of a cognizable racial group, ... that the prosecutor has exercised peremptory challenges to remove" members of that group from the jury, and "that these facts and any other relevant circumstances raise an inference that the prosecutor" excluded persons from the jury on account of race, such as "a 'pattern' of strikes" or the prosecutor's statements and questions during *voir dire* and while exercising challenges. 476 U.S. at 96–97, 106 S.Ct. at 1722–23.

Second, once the defendant has established a *prima facie* case, "the burden shifts to the" Government "to come forward with a neutral explanation" for the challenge, related to the particular case to be tried. The "explanation need not rise to the level" of justification for a challenge for cause, but the prosecutor may not merely deny "that he had a discriminatory motive" or affirm that the challenges were exercised in "good faith." 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

Third, the trial court must determine whether "the defendant has established purposeful discrimination." *Id.*

The Supreme Court declined to formulate specific procedures to implement its holding "[i]n light of the variety of jury selection practices followed in our state and federal trial courts...." *Id.* at 99 n. 24, 106 S.Ct. at 1725, n. 24.

## B. APPLICATION OF THE CONSTITUTIONAL FRAMEWORK TO TRIALS UNDER THE UNIFORM CODE OF MILITARY JUSTICE

█ "[T]he protections in the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces." *United States v. Jacoby*, 11 USCMA 428, 430–31, 29 CMR 244, 246–47 (1960). In *United States v. Santiago–Davila*, 26 MJ 380 (1988), we considered whether the prohibition against discriminatory use of peremptory challenges in jury selection, as set forth in *Batson*'s equal-protection analysis, should be

applied to use of peremptory challenges in courts-martial. *Cf. Frontiero v. Richardson*, 411 U.S. 677, 680, 93 S.Ct. 1764, 1767, 36 L.Ed.2d 583 (1973) (The concept of equal protection of the laws applies to members of the armed forces through the Due Process Clause of the Fifth Amendment.). We recognized that servicemembers do not have the right in a court-martial to a jury panel drawn from a representative cross-section of the population, 26 MJ at 389, citing Art. 25, UCMJ, 10 USC § 825, but we noted that *Batson* was based on the "equal-protection right to be tried by a jury from which no 'cognizable racial group' ha[d] been excluded," not on the Sixth Amendment right to trial by jury. *Id.* at 389–90. We found no reason to exclude members of the armed forces from the protections of *Batson*, observing that,

> even if we were not bound by *Batson*, the principle it espouses should be followed in the administration of military justice. In our American society, the Armed Services have been a leader in eradicating racial discrimination. With this history in mind, we are sure that Congress never intended to condone the use of a government peremptory challenge for the purpose of excluding a "cognizable racial group."

26 MJ at 390.

## C. IMPLEMENTATION OF *BATSON*

In *United States v. Moore*, 26 MJ 692 (1988) (*en banc*), the Army Court of Military Review[3] noted that implementation of *Batson* in the military justice system would require an understanding of the structural differences between court-martial panels and civilian juries. Specifically, the court noted that (1) "courts-martial are not subject to the jury trial" requirements of the Constitution; (2) military accused are tried by a panel of their superiors, "not by a jury of their peers"; (3) military panels are selected by the commander who convened the court-martial on a best-qualified basis and are not "drawn from a random cross-section of the

---

**3.** Subsequently redesignated as the Court of Criminal Appeals. *See* 41 MJ 213, 229 n. * (1994).

community"; (4) military counsel are provided with only a single peremptory challenge, in contrast to the numerous peremptory challenges permitted ·by most civilian jurisdictions; and .(5) in civilian jurisdictions, the numerous peremptory challenges are used to "select" a jury, but in courts-martial, a peremptory challenge is used to eliminate those already selected by the convening authority. *Id.* at 699. The court relied upon the importance of avoiding "the use of stereotypes for any purpose within the court-martial system" rather than on a history of discrimination. *Id.* at 700.

The Court of Military Review concluded that, "[b]ecause of the differences between courts-martial and other criminal trials, both legal and systemic, the specific procedural formulation adopted in *Batson v. Kentucky* ... to address purposeful racial discrimination in the exercise of peremptory challenges does not apply to courts-martial." 26 MJ at 700. In view of the differences, the court adopted a modified version of *Batson.* Instead of *Batson's* requirement to establish a *prima facie* case of discrimination, the court held that, when an "accused is a member of a recognized racial group and the government peremptorily challenges a member of the court-martial panel who is also a member of the accused's racial group, we will require only that the accused state an objection to the prosecutor's peremptory challenge." *Id.* at 700.

The Court of Military Review observed that relieving the defense of the obligation to prove a *prima facie* case would not place too great a burden on the prosecution in the context of the military community:

> Unlike the situation in the civilian context, trial and defense counsel are usually familiar with the court members, have had the opportunity to work with some of them in some capacity, or observed at least some of them in prior trials. Some members will be known to counsel by way of reputation for being particularly lenient or harsh, for having a law enforcement background, etc. *This familiarity with the court members will make the burden on military trial counsel to articulate race neutral reasons for the exclusion of a single minority*

> *member less difficult than that imposed on their civilian counterparts, who are exposed to each venireman only briefly.*

*Id.* at 701 (emphasis added).

The Court of Military Review then articulated the following approach for examining trial counsel's explanation for the challenge: (1) "the reasons provided by" trial counsel must be "clearly stated for the record"; (2) "the military judge will rule on the issue and make findings of fact"; and (3) *"[i]f a reasonable, racially neutral explanation is not presented, the peremptory challenge will be disallowed." Id.* (emphasis added). The court emphasized that it would not "rubber stamp" explanations from trial counsel, but it noted the importance of limiting the "scrutiny into the reason provided," protecting the privacy of prospective members, and discouraging evidentiary hearings. Because "the issue hinges on credibility of the explanations provided," the court stated that "great deference will be given to the trial court's findings." *Id.*

Upon review in this Court, we agreed with the lower court that the differences between military and civilian proceedings made it inappropriate to require the defense to establish a *prima facie* case of discrimination. 28 MJ 366, 368 (1989). We adopted the *per se* rule fashioned by the court below, under which any objection by the accused to trial counsel's peremptory challenge to a member of the same racial group as the accused would impose upon trial counsel a requirement to offer a race-neutral explanation. *Id.* We added that trial counsel must offer a "clear and reasonably specific explanation of legitimate reasons" for the challenge and that, "[a]lthough the reasons stated need not rise to the level justifying a challenge for cause, trial counsel cannot assume or intuit that race makes the member partial to the accused and cannot merely affirm his good faith or deny bad faith in the use of his challenge." *Id.* at 369.

## D. NATURE OF THE EXPLANATION

In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the Su-

preme Court set forth the standard for reviewing whether a prosecutor has provided a permissible race-neutral explanation for a peremptory challenge after the defense has established a *prima facie* case of racial discrimination. The Court noted that the prosecutor was not required to offer "an explanation that is persuasive or even plausible." *Id.* at 768, 115 S.Ct. at 1771, citing *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395 (1991) (plurality opinion). The Court held that any race-neutral explanation, such as the prospective juror's long hair, was permissible and that there is no requirement for the prosecutor to offer "a reason that makes sense." *Id.* at 769, 115 S.Ct. at 1771. According to the Court, it is inappropriate to focus on "the reasonableness of the asserted nonracial motive" rather than on "the genuineness of the motive." *Id.* at 769, 115 S.Ct. at 1771–72.

The issue before us in the present case is how to apply *Purkett*, a rule fashioned for a civilian jury system, in the military context. As the Court of Military Review noted in *Moore*, a civilian jury is derived from a representative, randomly selected cross-section of the population. Few, if any, of the prospective jurors are likely to be known by counsel. In civilian trials, numerous peremptory challenges are provided to each party as a means of selecting the final composition of the jury.

In military life, the court-martial panel is selected by the convening authority on the basis of a best-qualified standard. All members selected by the convening authority serve on the panel unless removed through a challenge for cause, exercise of the one peremptory challenge generally permitted to each party (see Art. 41(b), UCMJ, 10 USC § 841(b)), or under the military judge's limited power to excuse a member.

In contrast to a prospective civilian juror, who is not required to possess any significant degree of education, experience, or judicial temperament, the military member comes to the court-martial panel cloaked with the designation by a senior commander, the convening authority, that the member is "best quali-

fied for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Art. 25(d)(2).

*Purkett* reflects the Supreme Court's sensitivity to the fact that in civilian life—where there are virtually no qualifications for jury service—instinct necessarily plays a significant role in the use of peremptory challenges to ensure that both the Government and the accused are able to present the case to jurors capable of understanding it and rendering a fair verdict. While instinct serves any counsel, civilian or military, who is seeking to shape a jury, there is a less compelling need for counsel in courts-martial to exercise such challenges in order to ensure that panel members are qualified, because the convening authority already has taken that into account in exercising his responsibilities under Article 25 to select members on the basis of a "best-qualified" standard.

The Court of Military Review in *Moore* carefully considered the differences between military and civilian tribunals and held that trial counsel must offer "a reasonable, racially neutral explanation." 26 MJ at 701. To the extent that *Purkett* suggests that unreasonable or implausible explanations may suffice in civilian society, we adhere to the analysis of the differences in military and civilian tribunals in both the lower court's opinion and our own opinion in *Moore*.

■ In *Moore*, we declined to apply the Supreme Court's *Batson* procedure for determining whether there is a *prima facie* case of discrimination. Today we hold that the same reasons require us to apply a different standard for assessing the validity of trial counsel's proffered race-neutral explanation. Once the convening authority has designated a servicemember as "best qualified" to serve on a court-martial panel, trial counsel may not strike that person on the basis of a proffered reason, under *Batson* and *Moore*, that is unreasonable, implausible, or that otherwise makes no sense.

## II. APPLICATION OF *MOORE* TO THE PRESENT CASE

■ In the case before us, charges against appellee, an African–American, were re-

ferred to trial before a panel selected by the convening authority, which included Staff Sergeant (SSGT) E, also an African–American. When trial counsel sought to exercise a peremptory challenge against SSGT E, she explained her basis by noting SSGT E's "demeanor, in general. I was observing him during *voir dire,* and he seemed to be blinking a lot; he seemed uncomfortable." Defense counsel disputed these observations and objected to the challenge as insufficiently justified.

The military judge made no findings of fact in overruling defense counsel's objection to trial counsel's peremptory challenge. Instead, he simply referred to his past observation of trial counsel and provided her with an opportunity to assert that her explanation was made in good faith:

> Captain [K] [trial counsel]'s been very forthright with the Court in the past. I assume, Captain [K], that you're, likewise, being forthright this time; that you have no other reason for substituting or for excusing this member?

Trial counsel responded: "No sir, we do not."

The Court of Criminal Appeals reversed, holding that trial counsel had "utterly failed to defend [the peremptory challenge] as non-pretext." 44 MJ at 575.

As the court below noted, trial counsel's vague reference to the challenged member's demeanor "did not articulate any connection, race-neutral or otherwise, between what she observed of the member's demeanor and what that demeanor indicated concerning the rejected member's ability to faithfully execute his duties on a court-martial." *Id.*

*Batson* precludes counsel from relying on an assertion of good faith as justification for a peremptory challenge. 47 MJ at 284–285. The military judge's leading question, which induced a "good-faith" response from trial counsel, provides no basis for concluding that trial counsel had a race-neutral explanation for the challenge. The military judge's decision to rule based on his pre-existing professional relationship with trial counsel eliminated the possibility of any *Batson*-based challenge to trial counsel's exercise of this peremptory challenge. Once defense counsel

raised the *Batson–Moore* issue, the burden of production—that is, the burden to assert a race-neutral explanation—shifted to the Government. The military judge ignored that shift and did not require trial counsel to produce anything, much less the "clear and reasonably specific explanation of legitimate reasons to challenge" that we endorsed in *Moore, supra* at 369.

In the case before us, trial counsel challenged an African–American staff sergeant on the grounds that he "blink[ed]" and "seemed uncomfortable," a rationale for challenge asserted in anticipation of defense counsel's objection. Given the select nature of the pool of court-martial members chosen by the convening authority and the presumption that those members are the "best qualified" to serve on the court-martial, the statement by trial counsel that a member "seemed uncomfortable" does not, without further explanation, provide a sufficiently articulated reason to sustain a challenge under *Moore.* The issue in this case is not only the factual dispute as to whether the member "blink[ed]" or "looked uncomfortable"—characteristics likely exhibited by many who sit on courts-martial. Also at issue is whether there was something about this member's blinking or level of discomfort that would provide a reasonable, race-neutral basis for the challenge.

■ As we noted in *Moore,* argument of counsel normally will suffice to provide the record upon which the basis for a peremptory challenge may be assessed, although the military judge has discretion to "fashion more extensive proceedings in order to make a proper record." 28 MJ at 369. The military judge normally can and should resolve a dispute about the factual basis for a peremptory challenge without an evidentiary hearing. When the dispute involves in-court observations about a member, the military judge may be able to make findings of fact based upon his or her own observations as to whether the member exhibited the behavior referenced by counsel. In any case, the military judge should make findings of fact when the underlying factual predicate for a peremptory challenge is disputed. *See United*

*States v. Perez*, 35 F.3d 632, 636 (1st Cir. 1994).

In *Moore*, we held that "trial counsel ... cannot merely affirm his good faith or deny bad faith in the use of his challenge." *Id.* at 369. That is what happened in this case. Thus, the military judge erred in handling appellant's *Batson* challenge by relying on the good faith of trial counsel rather than by making findings of fact that would establish a reasonable, plausible race-neutral explanation for a peremptory challenge by the Government of a member chosen as "best qualified" by a senior military commander. The obligation to make such a finding is not a burdensome requirement within the court-martial system. *See Moore*, 26 MJ at 701.

## III

The decision of the United States Army Court of Criminal Appeals ordering a rehearing is affirmed.[4]

Chief Judge COX and Judge GIERKE concur.

SULLIVAN, Judge (dissenting):

I do not agree with the result reached by the majority opinion or with its rationale or its *dicta*. On my view, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), has been uniformly accepted in the military. E.g., *United States v. Witham*, 47 MJ 297 (1997); *United States v. Greene*, 36 MJ 274, 281 (CMA 1993); *United States v. Santiago–Davila*, 26 MJ 380, 390 (CMA 1988). Under this precedent and in view of the recent Supreme Court decision in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131

L.Ed.2d 834 (1995), trial counsel offered a legitimate race–neutral reason for his peremptory challenge (i.e., the juror's demeanor). The military judge properly evaluated trial counsel's credibility in terms of her past practice before the judge and her performance as an officer of the court. *United States v. Greene*, 36 MJ at 281. I see no abuse of discretion and would reverse the Court of Criminal Appeals' decision.*

CRAWFORD, Judge (dissenting):

This case raises the question of when this Court is bound by Supreme Court precedent. The majority holds that *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), does not apply in the military context when the prosecutor sets forth a race-neutral explanation for a peremptory strike against an African–American which is not objectively verifiable by the trial judge and is disputed by the parties. In support of its view, the majority cites the differences between civilian juries and military court panels. However, noticeably lacking from the majority's discussion is any evidence of past patterns of discrimination in the military community such as existed in the civilian community. The reasons set forth by the majority for not applying *Elem* are really reasons for not applying *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in the military in the first instance. With all due respect to my colleagues in the majority, when examined in this context, the fallacy of the majority's reasoning is readily apparent. Because the majority refuses to follow Su-

4. The Court of Criminal Appeals held:

The findings of guilty of Charge I and its Specification (attempted robbery), Specification 1 of Charge II (conspiracy to commit robbery), and Charge II are set aside. The remaining findings of guilty are affirmed. The sentence is set aside subject to the condition hereafter stated. The same or a different convening authority may order a rehearing on the Specification of Charge I and Specification 1 of Charge II and the sentence, which is conditionally set aside for the purpose of rehearing. If the convening authority determines that a rehearing on those charges is impracticable, he may dismiss the charges and order a rehearing

on the sentence only. If the convening authority determines that a rehearing on the sentence likewise is impracticable, he may approve a sentence of no punishment.
44 MJ 571, 576 (1996).

* I continue to hold the view that in reality only a total ban on peremptory challenges will eliminate the possibility of racial and gender discrimination in the use of such challenges. *United States v. Witham*, 47 MJ 297 (1997); *see also Batson v. Kentucky*, 476 U.S. at 107 (Marshall, J., concurring); Sullivan and Amar, *Jury Reform in America—A Return to the Old Country*, 33 Am. Crim.L.Rev. 1141, 1144–45, 1160–64 (Summer 1996).

preme Court precedent and continues this Court's practice of fashioning a different rule for the military without adequate justification,[1] I dissent.

The majority correctly recognizes that *Batson* is based upon the Fifth Amendment "equal protection right to be tried by a jury from which no 'cognizable racial group' ha[d] been excluded." 47 MJ at 285. Surely, there can be no dispute that this important equal-protection right applies to servicemembers accused of crimes as well as to their civilian counterparts. The issues, however, are (1) whether there was a deprivation of this right in the military as there was in many civilian systems, and, (2) whether the prophylactic measures of *Batson*, and especially its more restrictive progeny in this Court, *United States v. Moore*, 28 MJ 366 (CMA 1989), and *United States v. Santiago–Davila*, 26 MJ 380 (CMA 1988), were necessary in the military context to remedy a phantom deprivation. This Court in *Moore* eliminated the requirement for the opponent to make out a *prima facie* case of racial discrimination. Now the Court eliminates soft data for both sides, such as tone of voice, body language, or blinking as a race-neutral explanation under *Batson*. One wonders whether the majority even leaves intact the third step in *Batson*, because here they did not even require the opponent to prove purposeful racial discrimination. 514 U.S. at 767, 115 S.Ct. at 1770–71. *See Tulloch, infra* at 294 (Crawford, J., dissenting).

The majority goes to great lengths to describe the differences between the military and the civilian jury systems while discussing the history of the application of *Batson* to the military. I have no dispute with the accuracy of the majority's discussion. I do, however, question why the majority does not follow that discussion to its logical conclusion and consider why it is necessary to apply a more stringent standard to the military where there is no evidence of a present or historical equal-protection deprivation in the military's jury-selection process than, in contrast, to the civilian system which is replete with historical equal-protection violations. This Court does not have the luxury that state courts have to expand rights as a matter of state law under a state constitution (*California v. Greenwood*, 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30 (1988) (acknowledging that "[i]ndividual States may surely construe their constitution as imposing more stringent constraints...."")). Thus, I would conclude that the majority has not demonstrated adequate grounds or justification to fashion a more restrictive rule in the military context.

## FACTS

Trial counsel's challenge of the member was based upon this colloquy taken from the record of trial during *voir dire* of members by defense counsel.

DC: Staff Sergeant [E], you're the junior member of this panel, obviously, by the rank that you have. If you believe, at the end of the Government's case, that they have not met—that they have failed to prove their case beyond a reasonable doubt and that, therefore, Private Tulloch was not guilty, and every other panel member disagreed with you and thought him to be guilty, would you, nevertheless, vote not guilty—

SSG [E]: Yes.

DC:—or could you be swayed to turn because of everybody else?

SSG [E]: No.

---

1. *Some* examples include the following:

Right to counsel. *Compare Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994)(holding uncounseled misdemeanor conviction may be sentence enhancer) *with United States v. Kelly*, 45 MJ 259 (1996)(holding uncounseled Article 15s and summary courts-martial may not be used as sentence enhancers).

Counsel's conflict of interest. *Compare Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987)(holding defendant must demonstrate "an actual conflict of interest adversely affected his lawyer's performance") with *United States v. Smith*, 36 MJ 455, 457 (CMA 1993)(establishing a "rebuttable presumption that there is an actual conflict of interest whenever there is multiple representation and the military judge has not conducted a suitable inquiry on the record").

Implied bias. *See e.g., United States v. Youngblood*, 47 MJ 338, 345 (1997)(Crawford, J., dissenting).

DC: So if you believed he was not guilty, no rank could influence you to change your vote?

SSG [E]: [Negative response.]

Subsequently trial counsel indicated her intent to exercise a peremptory challenge. The following occurred:

TC: A little overly eager, sir. I'm sorry. The Government would challenge Staff Sergeant [E], sir. And, in anticipation of the *Batson* issue—

MJ: Yes?

TC:—the Government's position is that it was Staff Sergeant [E's] demeanor when Captain [S] [defense counsel] questioned him about whether he would be influenced at all by other members of the panel, and just his demeanor, in general. I was observing him during *voir dire*, and he seemed to be blinking a lot; he seemed uncomfortable. The Government's not challenging him at all based on his race.

MJ: And the fact that he's the junior member—does that have any bearing?

TC: No, sir, it does not.

MJ: Okay.

DC: Your Honor, I'd object to that based upon *Batson*. His answer was very unequivocal. He showed no emotions throughout. There was no [e]motions noted; there was no emotions throughout. His entire answer—he answered one question—just like—I mean, that could—you could—every panel member who answered a question could be struck for that reason, and we object that that is a subterfuge, that there is something else here, and we object to that striking—that challenge for—the peremptory challenge.

MJ: Captain [K] [trial counsel]'s been very forthright with the Court in the past. I assume, Captain [K] that you're, likewise, being forthright this time; that you have no other reason for substituting—or for excusing this member?

TC: No, sir, we do not.

MJ: And it's particularly not race—although I do note that [of 11 members] there are several other minority members on the panel, including the sergeant major

who was just in, as well as one female member—

TC: Sir, Sergeant First Class [B] and Sergeant First Class [KA].

ATC: And, for the record, sir, Lieutenant Colonel [B] is also a minority member, based on his worksheet.

MJ: Okay. Well, I'm satisfied that the Government has exercised its peremptory challenge on a non-discriminatory basis, just as the defense, by observing the demeanor of members, may perceive a member to be glaring at the accused or at counsel and feel uncomfortable with that member's demeanor. The Government is similarly entitled to excuse a member.

Defense, any peremptory challenge?

At the outset I acknowledge that these issues arise from the lower court's attempt to deal with a difficult and complex issue—what the military judge must do when there is a factual dispute relating to the race-neutral explanation for the exercise of a peremptory challenge governed by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This issue implicates the fundamental concern of how to prevent use of a subterfuge race-neutral explanation. *See Ford v. Norris*, 67 F.3d 162, 168 (8th Cir.1995) (holding race-neutral basis for preemptory challenge was pretext where stated reasons for challenge not supported by venireperson's statements); *Bennett v. Collins*, 852 F.Supp. 570, 578–85 (E.D.Texas 1994) (holding lack of factual basis for preemptory challenge renders avowed reason for challenge a pretext).

## DISCUSSION

The Fifth Amendment guarantees due process of law to servicemembers and citizens regardless of race. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). To exclude a potential court member based on race, gender, or ethnicity would violate these guarantees. *See United States v. Moore*, 28 MJ 366, 367–68 n. 3 (CMA 1989); *United States v. Santiago–Davila*, 26 MJ 380, 390 (CMA 1988). There is a package of rights guaranteed by *Batson* and its progeny: the right to a trial free of racial prejudice; and the right of perspective ju-

rors to participate in a criminal justice system. *Batson* applies to prosecutors, *id.*, and defendants, *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), regardless of the race, ethnicity, or gender of the defendant, *see, e.g., Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

## HISTORICAL CONTEXT

While peremptory challenges have existed since Roman times, *Batson*, 476 U.S. at 119, 106 S.Ct. at 1735 (Burger, C.J., dissenting), citing J. Pettingal, *An Enquiry into the Use and Practice of Juries Among the Greeks and Romans* 115, 135 (1769), they have only existed in the military since 1920. *Compare* Article of War (AW) 18, Act of June 4, 1920, Pub.L. No. 66–242, 41 Stat. 787 ("[T]he accused or the trial judge advocate ... shall be entitled to one peremptory challenge ....") *with* AW 18, Act of August 29, 1916, Pub.L. No. 64–242, 39 Stat. 653 (1916)("Members of a general or special court-martial may be challenged by the accused, but only for cause stated to the court.").

Court members may be challenged for cause or peremptorily. RCM 912(f) & (g), Manual for Courts–Martial, United States (1995 ed.). RCM 912(f) lists bases for challenges for cause. A peremptory challenge is the right to challenge a member without stating a reason. *Batson*, 476 U.S. at 91, 106 S.Ct. at 1720. While there is no limit on the number of challenges for cause, each party in the military generally has only one peremptory challenge. Art. 41(b), Uniform Code of Military Justice, 10 USC § 841(b) (1990).

The impetus for *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), was state laws prohibiting African–Americans from sitting as jurors. Hoffman, *Peremptory Challenges Should be Abolished: A Trial Judge's Perspective*, 64 U. Chi. L.Rev. 809, 828–29 (1997). Some states simply enacted statutes that prohibited their participation on juries. *Id.* When that practice was invalidated, there were a number of other "comprehensive patent and latent exclusion mechanisms (not to mention widespread physical intimidation)" used to exclude blacks as perspective jurors. *Id.* at 207–08, 85 S.Ct. at 829 (footnote omitted).

When *Swain* was tried in Talladega County, no African–American had ever sat on any criminal jury in that county. 380 U.S. at 223, 85 S.Ct. at 837–38. It was against this background that *Swain* was decided.

In *Swain* the Supreme Court held that it was a violation of the Equal Protection Clause for prosecutors to exercise systematically peremptory challenges in a discriminatory manner. 380 U.S. at 204, 226–27, 85 S.Ct. at 826–27, 839–40. However, that Court held that the defendant had the burden to demonstrate that the prosecutor made "systematic use of peremptory challenges" to exclude African–American jurors. *Id.* at 227, 85 S.Ct. at 839–40. This burden proved too onerous for the defense and led to the *Batson* standard.

In *Batson*, however, the Court recognized that this practice placed a "crippling burden of proof" on defendants and rendered "peremptory challenges ... largely immune from constitutional scrutiny." 476 U.S. at 92–93, 106 S.Ct. at 1720–21.

The concern expressed in *Swain* and *Batson* for combating racial discrimination which had existed for years and gone unchecked in the civilian systems has not existed in the military. Rather than having six to ten peremptories per side as in civilian courts, military counsel generally have only one peremptory challenge. Although African–Americans serving in the military have sat as panel members for years, there is no evidence of a pattern of systematic use of peremptory challenges against these members.

Even the largest military post has only a handful of lawyers. Their weaknesses and excesses are subject to daily scrutiny by their superiors, peers, and subordinates. How they interact with one another is subject to periodic review and would be known within the community. This same constant observation ordinarily is not present in the civilian community. Thus, in the military it is difficult to mask a peremptory challenge based on race, *Batson v. Kentucky*, *supra*, gender, *J.E.B. v. Alabama ex rel. T.B.*, 511

U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); or ethnicity, *United States v. Santiago–Davila*, 26 MJ 380.

## HARD v. SOFT DATA

A peremptory challenge might be based on "hard data" or "soft data." Hard data would include being an accuser, RCM 912(f)(1)(C); a witness, RCM 912(f)(1)(D); or an investigating officer for the offense charged, RCM 912(f)(1)(F). Hard data as a basis for a challenge for cause also includes a member's possessing a rigid notion of punishment, *United States v. Smart*, 21 MJ 15, 19–20 (CMA 1985)(holding military judge erred when he denied challenge for cause against captain who indicated he would not consider a no-punishment option), or being the principal law enforcement officer for a command, *United States v. Swagger*, 16 MJ 759 (ACMR 1983).

Both the Supreme Court and this Court have relied on soft data. In *Hernandez v. New York*, 500 U.S. 352, 355–58, 111 S.Ct. 1859, 1864–65, 114 L.Ed.2d 395 (1991), the prosecutor challenged peremptorily four potential jurors with Latino surnames. The defense objected. Without waiting for the judge to ask for a reason, "the prosecutor volunteered" that he was striking two of the jurors, Munoz and Rivera, because each juror had a brother who had been convicted of crimes, and one brother was being prosecuted by the same district attorney's office. As to the other potential jurors, Mikus and Gonzalez, he challenged them because he believed through their words and actions that their Spanish language fluency might hinder their ability to accept the interpreter's official translation. He explained that they "looked away" from him and responded "with some hesitancy" when asked whether they would follow the official version. *Id.* at 356, 111 S.Ct. at 1865. The defense then moved for a mistrial. Justice Kennedy, writing for a plurality, held that the prosecutor had set forth a race-neutral basis. Justice O'Connor, concurring in the result, emphasized that if "the trial court believes the prosecutor's non-racial justification, and that finding is not clearly erroneous, that is the end of the matter." *Id.* at 375, 111 S.Ct. at 1875.

The prosecutor in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), challenged one of the jurors because of his long uncut, unkempt hair, mustache, and beard. The Supreme Court stated:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has *made out a prima facie* case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a *race-neutral explanation* (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the *opponent of the strike* has *proved* purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Id.* at 767–68, 115 S.Ct. at 1770–71 (emphasis added; citations omitted).

The Court in a per curiam opinion (7–2) upheld the peremptory challenge, noting that the prosecutor had satisfied step two by "articulating a nondiscriminatory reason for the strike." *Id.* at 769, 115 S.Ct. at 1771. Additionally, the trial judge found no discriminatory intent by the prosecutor.

Justice Stevens, joined by Justice Breyer dissented as to misuse of a per curiam decision. He also commented: "Today the Court holds that it did not mean what it said in *Batson*." *Id.* at 771, 115 S.Ct. at 1772. But Justice Stevens noted, "In some cases, conceivably the length and unkempt character of a juror's hair and goatee-typed beard might give rise to a concern that he is a nonconformist who might not be a good juror. In this case, however, the prosecutor did not identify any such concern." *Id.* at 777, 115 S.Ct. at 1775.

In *United States v. Curtis*, 33 MJ 101, 105–06 (1991), this Court accepted the prosecutor's explanation that he challenged the member because the member thought it was an educational experience to sit on the court.

We unanimously held that the judge's acceptance of this explanation was not error. Also, in *United States v. Cooper*, 30 MJ 201 (1990), this Court held that *Batson* was marginally satisfied when the prosecutor explained the basis for the challenge was the member's prior experience, current duty position, and a review of her personnel records. *Id.* at 203.

The Federal courts have also relied on soft data as justifying reasons for peremptory challenges, to include the following: posture and demeanor,[2] eye contact,[3] body language and facial expressions,[4] mannerisms and inattentiveness,[5] gut reaction,[6] appearance and demeanor,[7] and poor attitude.[8] The issue should not be whether a peremptory challenge is based on hard data or soft data, but whether the challenge was based on discriminatory intent that results in purposeful discrimination.

Many military trial attorneys will make a decision based on body language, tone of voice, hair style, and dress. Generally, these attorneys are not motivated to eliminate a person from the jury because of race, ethnicity, or gender. The majority advocates holding peremptory challenges valid only when there is objective evidence of a race-neutral reason. During trial, a judge must often make decisions where there is no objective evidence available. For example, a military judge may decide whether to grant a challenge for cause based on a panel member's inelastic attitude.

In most instances, the contest will not be over whether there was blinking, certain body language, or a particular tone of voice. Instead, the contest will be over whether there was an underlying reason for the challenge, that is, an improper motive. The judge can assume the court member blinked or that there was particular body language or tone of voice. Even challenges based on objective evidence such as schooling, unit assignment, or awards do not present a question of the objectivity of the evidence, but rather the underlying motive for the peremptory challenge. To avoid a credibility issue among the attorneys, the majority would prohibit an attorney from using intuition as a sufficient reason for exclusion of a member and require resort to hard data.

I now must ask whether this Court intends to prohibit use of soft data altogether as a basis for a peremptory challenge or whether that prohibition only applies when a prospective court member belongs to a racially cognizable group. Likewise, is it only the Government that is barred from using soft data or does the majority's ban also apply to the accused and his or her counsel? Will we allow double or multiple standards, or will we follow the jurisprudence of the Supreme Court in providing even-handed equal protection of the law?

What the majority appears to require is a specific verifiable reason that will be within the judge's actual knowledge. There are many decisions the judge must make at trial that are not based on the actual knowledge the majority is demanding. Furthermore, what may appear as a demeanor concern to

2. *United States v. Forbes*, 816 F.2d 1006, 1010–11 (5th Cir.1987); *see Troupe v. Groose*, 72 F.3d 75, 76 (8th Cir.1995).

3. *See United States v. Casper*, 956 F.2d 416, 418–19 (3d Cir.1992); *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir.1988); *Dunham v. Frank's Nursery & Crafts, Inc.*, 967 F.2d 1121 (7th Cir.1992).

4. *See United States v. Terrazas–Carrasco*, 861 F.2d 93, 94–95 (5th Cir.1988); *Reynolds v. Benefield*, 931 F.2d 506, 512 (8th Cir.1991); *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir.1995); *United States v. Johnson*, 4 F.3d 904, 913 (10th Cir.1993), *Barfield v. Orange County*, 911 F.2d 644, 648 (11th Cir.1990).

5. *See United States v. Woods*, 39 MJ 1074 (ACMR); *Pemberthy v. Beyer*, 19 F.3d 857, 872 (3d Cir.1994); *United States v. Melton*, 883 F.2d 336, 338 (5th Cir.1989); *United States v. Atkins*, 25 F.3d 1401, 1405–06 (8th Cir.1994); *United States v. Power*, 881 F.2d 733, 740 (9th Cir.1989).

6. *See United States v. Moreno*, 878 F.2d 817, 820 (5th Cir.1989).

7. *See United States v. Bergodere*, 40 F.3d 512 (1st Cir.1994); *United States v. Krout*, 66 F.3d 1420, 1429 & n. 13 (5th Cir.1995); *United States v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir.1989).

8. *See United States v. Vaccaro*, 816 F.2d 443, 457 (9th Cir.1987).

one side in a criminal trial may not be observed or even a concern at all to the other side. Surely we do not expect military judges to verify an intuition or subjective concern unique to either a prosecutor or defense counsel. The judge is not and cannot be in the shoes of counsel. Rather, it is the responsibility of the judge to determine if there is purposeful discrimination in employing a peremptory challenge.

## DECISION BELOW

The Court of Criminal Appeals perceived a *Batson* violation based on the challenge by trial counsel against a member of the panel who was of the same race as the accused. The court relied on the three-step analysis required by *Batson* as well as our decision in *United States v. Moore*, 28 MJ 366 (1989). The first step arises when a peremptory challenge is made (presumably by trial counsel) "to exclude from membership of a court-martial a member of a cognizable racial group who is also of the same race as the accused," and defense counsel objects. *Moore supra* establishes a *prima facie* case of purposeful discrimination at this point. 44 MJ at 574.

The second step occurs when the Government offers "a (facially) race-neutral explanation" for its use of the peremptory challenge. *Id.*

The lower court properly acknowledged the importance of trial counsel's explanation of her peremptory challenge. The court stated, "[T]he clarity and persuasiveness of the trial counsel's explanation becomes highly significant: ambiguous or implausible justifications 'may (and probably will) be found to be pretexts for purposeful discrimination.'" 44 MJ at 574, quoting *Elem, supra* at 768, 115 S.Ct. at 1771. Further, the lower court scrutinized the prosecutor's explanation, attempting to understand her motive in exercising the peremptory challenge. The court carefully reviewed what the prosecutor stated she observed of the member's demeanor (he "blink[ed] a lot" and "seemed uncomfortable" during *voir dire*) and what that observation indicated about the member's ability to execute his court-martial duties.

I would hold that the court below erred in giving inadequate deference to the military judge. Trial counsel gave a race-neutral explanation and the judge accepted her explanation as credible, relying on her integrity as an attorney and officer of the court. The defense made no further objection and did not request a hearing regarding the challenge. As the Supreme Court stated in *Hernandez*, 500 U.S. at 365, 111 S.Ct. at 1869 (plurality opinion), "[T]he best evidence [of truthfulness] often will be the demeanor of the attorney who exercises the challenge." On this record, there was no basis to overturn the judge's determination that trial counsel's explanation was credible. In reversing the judge, the lower court did not adhere to the proper standard of review, *i.e.*, that the judge's ruling should be given "great deference" and should be reversed only if it is "clearly erroneous," *id.* at 364–65, 111 S.Ct. at 1868–69; *Curtis*, 33 MJ at 105.

The lower court properly stated the law as it reaffirmed *Batson's* step three: "the party objecting to the challenge must prove purposeful racial discrimination." 44 MJ at 574. Moreover, the lower court explicitly referred to the accused's obligation to "carry his burden of proof by persuading the judge that the trial counsel's asserted justification is 'merely a pretext for intentional race-based discrimination.'" *Id.* (quoting incorrectly *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721). Yet the effect of the lower court's decision was to shift the burden to the Government to show no purposeful discrimination.

By concluding that the record was incomplete to resolve the issue of purposeful discrimination, the lower court shifted the burden of proof regarding purposeful discrimination. Effectively, that court faulted the Government for the failure of the defense to establish purposeful discrimination. Accordingly, the second certified question should be answered in the affirmative.

The fundamental error of the lower court was to adopt and retroactively apply a new rule requiring the trial judge to articulate the bases of factual findings related to *Batson*

challenges when the record presents a dispute among the parties as to the factual predicate for the peremptory challenge. 44 MJ at 576. This Court has not required these factual findings in the past. The lower court, however, may find solace in the First Circuit's support of such a rule. *United States v. Perez*, 35 F.3d 632, 636 (1994).

In the present case, as in *Perez*, the absence of these factual findings does not justify the lower court's reversal of the military judge's ruling. After the judge allowed SGT [E] to be challenged peremptorily without making express factual findings as to the race-neutral explanation, there was no further defense comment, thought, objection, or other expression of dissatisfaction with the prosecutor's explanation. Additionally, the defense made no request for examination or presentation of evidence. Since defense counsel failed to pursue the matter further during *voir dire*, a belated post-trial evaluation of the matter makes little sense. *See McKeel v. City of Pine Bluff*, 73 F.3d 207, 210 (8th Cir.1996)(holding that although opponent of a peremptory challenge is not required to offer proof to establish purposeful discrimination, failure to do so "may impact on whether the party has carried its burden of persuasion to show purposeful discrimination"). Finally, the ruling of the judge was not clearly erroneous. Trial counsel volunteered a race-neutral explanation and the judge properly assessed this explanation as credible. Absent other evidence, the accused has not carried the burden to establish purposeful discrimination. *See United States v. Curtis, supra.* This Court should uphold the military judge and reaffirm that a race-neutral explanation may be based on the prosecutor's perception of the member's demeanor. *See United States v. Thomas*, 40 MJ 726, 733 (NMCMR 1994)(reasoning that "a look or gesture is often the cue for the lawyer's

intuition that the prospective member is not well-disposed towards the lawyer's side of the case"). The judge's ruling is further supported by the fact that the prosecution only challenged one minority member of the panel, while not seeking to challenge for cause the remaining two or more minority court members.

In examining whether racial discrimination was involved in a peremptory-challenge decision, courts often rely upon "the number of racial group members in the venire panel" if there is more than one member of the group in the jury pool. Austin, *Twenty–Sixth Annual Review of Criminal Procedure—Part III: Right to Jury Trial, Peremptory Challenges: Equal Protection Issues*, 85 Geo. L.J. 1240, 1257 n. 1734 (1997). In addition, *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987), provides that if "the Government used its peremptory challenges to strike the last remaining juror of defendant's race" (two were challenged for cause and one could have been challenged for cause—*id.* at 1312) it "raise[s] an inference" that that "juror was excluded" because of his race (Native American). *Id.* at 1314. In addition, *United States v. Wills*, 88 F.3d 704, 714–15 (9th Cir.1996), reasoned that the defendant had not made a *prima facie* case of racial discrimination where the prosecutor challenged two African–Americans in the jury pool but where three others remained on the panel.

I would hold that the judge did not abuse his discretion in failing to sustain defense counsel's *Batson* objection. Even following our more stringent decision in *United States v. Moore*, 28 MJ 366, I am convinced that the prosecutor adequately set forth the basis for her peremptory challenge. The judge concluded that the prosecutor had been forthright in the past and that there was no evidence of a discriminatory intent.