UNITED STATES, Appellee,

v.

Sergeant First Class Joe M.D. ROBINSON, United States Army, Appellant.

ARMY 9800383.

U.S. Army Court of Criminal Appeals.

4 Aug. 2000.

---

5. Judge Thomas E. Booth took final action in this case prior to his release from active duty.

**750**

For Appellant: Colonel Adele H. Odegard, JA; Major Scott R. Morris, JA; Major Jonathan F. Potter, JA; Captain Thomas J. Barrett, JA (on brief); Captain Steven P. Haight, JA; Captain Kevin J. Mikolashek, JA.

For Appellee: Major Patricia A. Ham, JA; Major Timothy W. Lucas, JA (on brief).

Before MERCK, Senior Judge, CASIDA, and TRANT, Appellate Military Judges.

## OPINION OF THE COURT

MERCK, Senior Judge:

Contrary to his pleas, appellant was found guilty by a general court-martial composed of officer and enlisted members of violating a lawful general regulation (three specifications), making a false official statement, and committing indecent acts with another (three specifications) in violation of Articles 92, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge. The case is before the court for mandatory review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

We have considered the record of trial, appellant's two assignments of error, the matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's response thereto. In the first assignment of error, appellant asserts:

> THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE GRANTED THE GOVERNMENT'S PEREMPTORY CHALLENGE OVER A DEFENSE OBJECTION BASED UPON *UNITED STATES V. BATSON [citations omitted]*, WHERE THE MILITARY JUDGE APPLIED THE WRONG LAW AND WHERE THE GOVERNMENT GAVE MERELY A PRETEXTUAL REASON FOR CHALLENGING THE MEMBER.

We find that this assignment of error has merit and will grant appropriate relief. Because of our disposition based on this assignment of error, we need not address the remaining assignment of error or appellant's *Grostefon* matter.

### FACTS SURROUNDING THE PEREMPTORY CHALLENGE

During preliminary questioning, the military judge asked the court members if the information contained in the convening order was correct. First Sergeant (1SG) Sanchez replied that his unit of assignment [B Company, 2nd Battalion, 60th Infantry] had changed, and it was "120th AG Battalion instead of B Company, 260th [sic]."

During voir dire, the military judge asked if there was any court member who was in the rating chain, supervisory chain, or chain of command of another member. Colonel (COL) Scully informed the military judge that 1SG Sanchez was a First Sergeant in his brigade. Colonel Scully stated that he would not feel embarrassed or restrained in any way in the performance of his duties as a court member if a person over whom he held a position of authority should disagree with him. First Sergeant Sanchez stated that he would not feel inhibited or restrained in any way in performing his duties as a court member including the full and free discussion of his views during deliberations because COL Scully held a position of authority over him.

■ Appellant is an African–American male. Trial counsel exercised his peremptory challenge against 1SG Sanchez, a Hispanic male. Although unclear from the record, 1SG Sanchez was apparently the only Hispanic on the panel. The defense counsel objected and demanded a race-neutral reason for the challenge, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The military judge mistakenly stated that, because appellant and 1SG Sanchez were not the same race, *Batson*[1] did not apply. The military judge then informed trial counsel that he was not going to require a reason but he could state one if he desired. The following exchange occurred:

> TC: [ ] First Sergeant Sanchez, is brand new to the—the TCC's commander and his brigade commander is Colonel Scully. And for that reason, I would strike him from the panel.

> MJ: I find that to be a reasonable and plausible basis for a challenge although I don't think that any—such explanation is required under *Batson*, *Tulloch*, or *Witham*.

The military judge granted the government's peremptory challenge of 1SG Sanchez and defense counsel's peremptory challenge of COL Scully.

## CIVILIAN APPLICATION OF BATSON

In evaluating a claim of race discrimination in a civilian trial, the Supreme Court established the following three-step process: (1) a defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race; (2) the burden then shifts to the Government to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

See *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

## BATSON AND ITS PROGENY'S APPLICATION TO THE MILITARY

### I. Step One

■ Over twelve years ago, in *United States v. Moore*, 26 M.J. 692, 698–700 (A.C.M.R.1988)(en banc), this court stated:

> The basic principles enunciated, i.e., elimination of racially discriminatory challenges, are consistent with and necessary to the proper administration of military justice. . . .

> Application of the specific *procedural formulation* enunciated in *Batson* to trials by court-martial is neither required nor practicable, due to substantial legal and systemic differences between courts-martial and civil criminal prosecutions. . . .

> The limitation at courts-martial to one peremptory challenge per party would render the burden of establishing a *prima facie* case under the *Batson* decision intolerably high. . . . Therefore, in those cases where . . . the government peremptorily challenges a member of the court-martial panel who is [a member of a recognized racial group], we will require only that the accused state an objection to the prosecutor's peremptory challenge. . . . The government will be required to provide an explanation for the challenge, notwithstanding the absence of defense evidence supporting the objection and without regard to the merits of any defense evidence.

Our superior court adopted our *"per se* rule for all the services." *Moore*, 28 M.J. 366, 368 (C.M.A.1989); *see also United States v. Tulloch*, 47 M.J. 283, 286 (1997).

---

1. In a series of cases from *United States v. Moore*, 28 M.J. 366 (C.M.A.1989) to *United States v. Ruiz*, 49 M.J. 340 (1998), the Court of Appeals for the Armed Forces has extended a *Batson* challenge to include, upon timely objection by the accused, any peremptory challenge of a court-martial member of a cognizable racial group or gender when the "challenged member is either the only minority member or is one of a

very small percentage of minority members on a particular panel." *See United States v. Cruse*, 50 M.J. 592 (1999). In 1991, in *Powers v. Ohio*, 499 U.S. 400, 402, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court decided that, "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenge whether or not the defendant and the excluded juror share the same race."

## II. Step Two

■ Once the defense has raised a *Batson* challenge, the government is required to articulate a race-neutral explanation for the peremptory challenge. In *Purkett ·v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the Supreme Court stated, a race-neutral explanation need not be either "persuasive or even plausible." The Court found that the civilian prosecutor had complied with step-two when he peremptorily challenged two African–American men because he "did not like the way they looked," "they looked suspicious," and one of them had "long, unkempt hair, a mustache, and a beard." The Supreme Court's analysis does not focus on *"reasonableness* of the asserted non-racial motive;" instead, the Court focus's on the *"genuineness* of the motive." *See id.* at 769, 115 S.Ct. 1769.

■ Because of the structural differences between the military and civilian trial courts,[2] the Court of Appeals for the Armed Forces has opted not to follow the *Purkett/Batson* standard enunciated by the Supreme Court for evaluating a prosecutor's race-neutral explanation. Our superior court has mandated a very different standard in assessing the validity of a trial counsel's race-neutral explanation to a *Batson* challenge. In addressing this question, our superior court said:

> While instinct serves any counsel, civilian or military, who is seeking to shape a jury, there is a less compelling need for counsel in courts-martial to exercise such challenges in order to ensure that panel members are qualified, because the convening authority already has taken that into account in exercising his responsibilities un-

der Article 25 to select members on the basis of the "best-qualified" standard.

> [T]rial counsel must offer "a reasonable, racially neutral explanation." . . . .

> [T]rial counsel may not strike [a] person [the convening authority has designated as "best qualified" to serve on a court-martial panel] on the basis of a proffered reason, under *Batson* and *Moore*, that is unreasonable, implausible, or that otherwise makes no sense.

*Tulloch*, 47 M.J. at 287.

In *Tulloch*, trial counsel proffered that the challenged member "seemed to be blinking a lot" and that he "seemed uncomfortable." *Id.* at 288. Our superior court said:

> [T]rial counsel's vague reference to the challenged member's demeanor *"did not articulate any connection*, race-neutral or otherwise, *between what she observed of the member's demeanor and what that demeanor indicated* concerning the rejected member's ability to faithfully execute his duties on a court-martial."

> . . . .

> Given the select nature of the pool of court-martial members chosen by the convening authority and the presumption that those members are the "best qualified" [3] to serve on the court-martial, the statement by trial counsel that a member "seemed uncomfortable" does not, *without further explanation,* provide a sufficient articulated reason to sustain a challenge. . . . [A]t issue is whether there was something about this member's blinking or level of discomfort that would provide a reasonable, race-neutral basis for the challenge.

*Id.* (citations omitted)(emphasis added).

■ In the case before us, trial counsel peremptorily challenged the Hispanic First

---

2. (1) "[C]ourts-martial are not subject to the jury trial" requirements of the Constitution; (2) military accused's are tried by a panel of their superiors, "not by a jury of their peers"; (3) military panels are selected by the convening authority on a best-qualified basis and are not "drawn from a random cross-section of the community"; (4) military counsel are provided with only a single peremptory challenge, in contrast to the numerous peremptory challenges permitted by most civilian jurisdictions; and (5) in civilian jurisdictions, the numerous peremptory challenges are used to "select" a jury, but in courts-martial, a

peremptory challenge is used to eliminate those already selected by the convening authority.

*Tulloch*, 47 M.J. at 285–286 (citing *Moore*, 26 M.J. at 699).

3. Unlike a *potential* civilian juror, a military panel member has been selected by a convening authority as best qualified for the duty by "reason of age, education, training, experience, length of service, and judicial temperament." UCMJ art. 25(d)(2), 10 U.S.C. § 825(d)(2).

Sergeant. Appellant then stated an objection to the prosecutor's challenge, thus satisfying the per se rule. In attempting to rebut the suggestion that the challenge was based on race, trial counsel offered that the challenged member had recently been reassigned to the command of a brigade commander who was also a potential panel member. It is beyond cavil that trial counsel's offer articulated a race-neutral reason that meets the standard of *Purkett,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 and *Batson,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.[4]

However, in applying *Tulloch,* trial counsel's reference to the challenged member's reassignment and duty relationship with another potential member did not articulate *any connection* between the reassignment and duty relationship and what they *indicated* concerning the rejected member's ability to faithfully execute his duties on a court-martial. *Cf. Tulloch,* 47 M.J. at 288 (citing *Tulloch,* 44 M.J. 571, 575 (Army Ct.Crim. App.1996)). As to the first proffered reason, i.e., the first sergeant's recent arrival in the unit, we fail to discern any connection between how long he had served in his present unit and his ability to serve on a court-martial panel. As to the second proffered reason, i.e., the duty relationship between the challenged member and another prospective member, we again, under the facts of this case, fail to find any connection to his ability to serve on this court-martial panel. While there may be instances where such a concern about the duty relationship of senior-subordinate members might be reasonable, plausible, or sensible, it was not in this case. Both members specifically and unequivocally denied that they would be influenced in any

way by the duty relationship. The First Sergeant was new to the unit, and there was not a close duty relationship, i.e., multiple levels of command separate a brigade commander from a unit first sergeant.

Given the select nature of the pool of court-martial members chosen by the convening authority and the presumption that those members are the "best qualified" to serve on the court-martial, the statement by trial counsel that a member "is brand new to the [command]" and "his brigade commander is [a potential panel member]" under the circumstances of this case, does not, *without further explanation,* provide a sufficient articulated reason to sustain a *Batson* challenge. Simply put, the trial court left at issue, whether there was something about this member's reassignment and duty relationship that would provide a reasonable, plausible, or sensible, race-neutral basis for the challenge.[5]

Accordingly, the findings of guilty and the sentence are set aside. The same or a different convening authority may order a rehearing. If the convening authority determines that a rehearing is impracticable, he may dismiss the charges.

Judge TRANT and Judge CASIDA concur.

---

4. An excellent analysis for this position is found in *Tulloch,* 47 M.J. at 289–297 (Sullivan, J., dissenting, and Crawford, J., dissenting).

5. As to step three, we also note that the military judge did not make a determination as to whether appellant had proved purposeful racial discrimination, i.e., whether trial counsel's explanation was credible or pretextual. While we do not reach this issue, due to our disposition of this case, we note that our superior court has stated, "Optimally, an express ruling on this question is preferred." *United States v. Gray,* 51 M.J. 1, 34 (1999).